## Sovereign Camp Woodmen of the World v. Burton.

(Decided October 5, 1916.)

Appeal from McCracken Circuit Court.

Insurance—Fraternal Insurance—Violation of Law by Insured—Question for Jury.—In an action on a certificate of insurance exempting the society from liability if the death of the insured was the result of a duel, or of his violation or attempted violation of the laws of the State, evidence examined and held that the question whether or not the insured's death was the result of a duel, or of his violation or attempted violation of the laws of the State, was for the jury.

COLEMAN & WELLS for appellant.

EATON & BOYD for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

On June 16th, 1910, the Sovereign Camp of the Woodmen of the World, a fraternal insurance society, issued to Arthur Burton a certificate insuring his life in favor of his mother, Mary Burton, in the sum of $1,000.00. Burton died on November 29th, 1914. At that time he was a member in good standing of one of the society's subordinate lodges, known as Jersey Camp No. 10, located in the city of Paducah, Kentucky. The society having declined to pay, the beneficiary, Mary Burton, brought this suit to recover on the certificate. The trial before a jury resulted in a verdict and judgment in her favor. The society appeals.

The policy contains a provision exempting the society from liability, if the insured should die in consequence of a duel, or of the violation or attempted violation of the laws of the state or of the United States, or

any other province or nation.   After setting out the foregoing provision of the certificate, the society pleaded by way of defense that Arthur Burton came to his death on the 29th day of November, 1914, from a gun wound inflicted upon him by another person, or persons, while he was engaged in a violation or attempted violation of the laws of the state of Arkansas, and that his death was the direct result of a duel, or violation or attempted violation of the laws of said state.

It is insisted for the society that the court should have held, as a matter of law, that its defense was clearly made out and should have directed a verdict in its favor.

It appears from the record that a shooting affray had taken place near the town of Osceola, Arkansas.   D. H. Blackwood, a deputy sheriff, together with W. R. Dean, town marshal of Osceola, and G. A. Swift, the coroner, went to the scene of the difficulty to make an investigation of the matter.   Swift, who said he acted as spokesman, told a boy by the name of Willie Johns to go to Burton and tell him to bring the guns that were used in the difficulty.   In a short time Burton approached the parties carrying a double-barrel shotgun, a pump gun and a pistol.   When Burton reached a point about seventy-five or one hundred yards distant, these parties testified that they called on him to halt and not come any further.   They further claim that they told him to lay the guns down.   When Burton was within fifty yards of Dean, the town Marshal, he stopped and laid one of the guns down.   Dean and those with him testify that as soon as Burton laid the gun down he immediately started to raise the other gun for the purpose of shooting some of the officers, whereupon Dean stepped from behind a large tree and shot Burton with a Winchester rifle and killed him.   It further appears that while Burton was some distance away Dean got behind a tree with his rifle and Blackwood lay behind a log with his pistol leveled on Burton.   Swift was only a few steps distant.   On cross-examination Swift testified that when Burton got within fifty yards of Dean he was told to stop and lay down the guns.   He leaned over and laid one of the guns down.   His testimony on this point is as follows:

"Q.   What position did he have the shotguns? A.   The shotguns were crossed in front of him and his pistol was in his right hand.   Q.   At the time he was told to halt by Dean and lay down these guns, you say

he stopped and leaned over as if he let them down? Is that true? A. He leaned over as if to lay it down or drop it. Q. Did he lay it down? A. One. Q. How near was he stooped over; that is, about what angle? A. About a third over, I should judge. Q. At the time Dean fired this shot you say he was raising his gun? Is that right? A. Yes, sir. Q. How high was the muzzle of his gun from the ground? A. I could not say. He was a man about 5 feet 9 or 10 inches high, and I suppose he was about that high (indicating) from the ground—about three or three and a half feet. Q. Was the muzzle about as high as his waist? A. Hardly so high. Q. At that time was he looking at you? A. I thought he was. Q. Was the gun pointing the way he was looking? A. Yes, sir. Q. He was coming toward you down the path? A. Yes, sir."

On the same point Mr. Blackwood's evidence is as follows:

"Q. At the time he laid this gun down, as described by you, how long from that time until Dean shot him? A. Just that quick (indicating). Q. He reached to lay one gun down? A. No, he just kinder shoved that gun down and was stooping over with the other one. Q. Had he started up when Dean shot him? A. No. Q. At the time Dean shot him I believe you state Burton was in a crouched position? A. Yes, sir. Q. Did he have this gun in both hands? A. Yes. Q. How high was the muzzle of the gun from the ground? A. He had the muzzle, I will say, a couple of feet. Q. The muzzle of the gun was a couple of feet from the ground? A. Yes. Q. And Burton you say was half stooped over? A. Yes. Q. You were looking at him? A. Yes, straight at him."

Willie Johns, the boy who was sent to convey the message to Burton, was introduced by plaintiff and testified as follows:

"Q. Who told you to go? A. Mr. Dean. Q. What for? A. To tell him to come up and bring his guns? Q. What guns? A. Frank Hinton's guns. Q. Did you tell him? A. Yes, sir. Q. Did they tell him to put the guns down? A. Yes, sir. Q. What did he do? A. Made a couple of steps forward, laid down the pump gun and kept coming up with the double-barrel shotgun. Q. Had he gotten straight? A. No, sir. Q. How did he have the double-barrel shotguns? In his hands?

A. Across his arm here (indicating). Q. You mean his left arm? A. Yes, sir. Q. Well, then, how long after he told him to halt the last time before he shot him? A. About ten seconds. Q. Did he tell him to halt after he stopped to lay the guns down? A. He told him to halt and lay the guns down. Q. Did Burton stop at the time he laid the gun down? A. Yes, sir. Q. Standing still? A. Yes, sir. Q. And when he laid the gun down and was standing barely up, he shot him? A. Yes, sir.''

On the cross-examination he testified as follows:

''Q. Did he have his gun, at the time he was shot, in a position to shoot, or was he raising it for the purpose of shooting? A. No, sir, not quite. He had it in the bend of his arm. Q. You were looking directly at Burton at the time he was shot? A. Yes, sir. Q. All of that time he had his gun laid across his left arm? A. Yes, sir.''

The evidence fails to show that the officers were armed with a warrant for the arrest of Burton or *subpoena duces tecum* returnable before a court having jurisdiction of the matter, nor does it appear that any court of inquest was being held by the coroner. There is no proof in the case as to what the law of Arkansas is on the subject. We shall not, therefore, assume that in the absence of a warrant, or of a *subpoena duces tecum,* or of a regular court of inquest, these officers had any authority or right to demand the guns from Burton or to interfere with his movements in any way. As the case is presented, however, they assumed hostile positions on the approach of Burton and leveled their guns at him. Notwithstanding their lack of authority, it seems that Burton did approach them, and, in response to their demand to lay the guns down, proceeded to lay one of them down. Then as he raised himself up he was shot and killed by Dean. In considering the case it must be remembered that Dean was the party who did the shooting and that the others were acting in concert with him. While they testify that Burton was raising his gun for the purpose of shooting some one of the officers, the physical facts to which they testify do not substantiate their contention in such a clear and unmistakable manner as to preclude every inference to the contrary. Whether or not Burton was engaged at the time of his

death in an attempted violation of the laws of Arkansas depends, not on what the officers thought he intended to do, but on what he actually did and intended to do. He was told to halt and lay the guns down. He did lay one of the guns down. The other gun was on his left arm. Willie Johns, on cross-examination, said that Burton at the time he was killed did not have the gun in a position to shoot; he had it in the bend of his arm. Swift and Blackwood both say that the muzzle of the gun was only two or three feet from the ground. Considering the case in the light of the fact that he leaned over to lay one of the guns down and did lay it down, that the other gun was lying on his left arm, that Willie Johns says that he did not have the gun in a position to shoot, and that he was shot and killed by Dean while leaning over, we think it was for the jury to say whether or not, at the time he was killed, he was engaged in a violation or attempted violation of the law.

Judgment affirmed.